# 24-1064

## United States Court of Appeals for the Second Circuit



SOL BACK,

*Plaintiff-Appellant,*

-against-

BANK HAPOALIM, B.M. and GIL KARNI,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

HERBERT SMITH FREEHILLS NEW YORK LLP
Scott S. Balber
Michael P. Jones
Tyler T. Hendry
200 Park Avenue
New York, New York 10166
Tel: (917) 542-7600
Email: scott.balber@hsf.com
michael.jones@hsf.com
tyler.hendry@hsf.com

*Attorneys for Defendants-Appellees*
*Bank Hapoalim, B.M. and Gil Karni*


Dick Bailey Service INC
APPELLATE SERVICES
www.dickbailey.com

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, counsel for appellee Bank Hapoalim B.M. ("BHI") hereby certifies that BHI is a publicly traded corporation. BHI does not have any parent corporation, nor is it aware of any publicly held corporation that owns 10% or more of its stock.

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................iv

STATEMENT OF THE ISSUES PRESENTED ......................................1

STATEMENT OF THE CASE ...........................................................2

    I.    Karni Attends In-Person Office Events in December 2021........................2

    II.   Plaintiff Lodges an Internal Complaint.........................................3

    III.  Plaintiff Is Offered a Transfer to a Higher-Paying Position .........................4

    IV.  Plaintiff's Irrelevant Allegations Involving Other Employees....................7

    V.   Plaintiff Initiates This Action in the District Court ......................................8

SUMMARY OF THE ARGUMENT .......................................................9

STANDARD OF REVIEW ...............................................................11

ARGUMENT ...............................................................................12

    I.    The District Court Properly Concluded That Plaintiff's
        Complaint Failed to Allege Any Adverse Employment Action................12

        A.   Plaintiff's Speculation That Her Transfer Was
            Viewed by Others as a Demotion is Insufficient ................................13

        B.   Plaintiff's Allegation That She Was Transferred
            "Away From the Center of Power" is Insufficient.............................14

        C.   Plaintiff's Unpleaded Allegations Regarding
            Her Skill Set Should Not Be Considered on Appeal ..........................16

II.    The District Court Properly Concluded That
       Plaintiff's Complaint Failed to Allege a Constructive Termination...........16

       A.    None of the Actions Alleged by Plaintiff Are Considered Adverse...17

       B.    The District Court Did Not Err In Its
             Analysis of Defendants' Alleged Cumulative Actions ......................19

III.   The District Court Properly Concluded That Plaintiff
       Failed to Allege Facts to Support an Inference of Discrimination ............21

       A.    The Court Can Determine If Plaintiff's
             Comparators Are Similarly Situated as a Matter of Law...................21

       B.    Plaintiff Is Not Comparable to Five Senior Executives.....................23

       C.    Plaintiff's Allegations of a
             Misogynistic Work Culture Are Insufficient ......................................24

IV.    The District Court Correctly Dismissed
       Plaintiff's Pendent State and City Law Claims ..........................................25

CONCLUSION.................................................................................................26

CERTIFICATE OF COMPLIANCE WITH FRAP 32(a) .....................................27

# <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                    **Page(s)**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................... 11, 12

*Bernstein v. New York City Dep't of Educ.*,
   2020 WL 6564809 (S.D.N.Y. Nov. 9, 2020)................................... 18, 20

*Catania v. NYU Langone Health Sys.*,
   2022 WL 17539121 (S.D.N.Y. Dec. 5, 2022) .......................................17

*Chen v. Shanghai Cafe Deluxe, Inc.*,
   2019 WL 1447082 (S.D.N.Y. Mar. 8, 2019) ........................................17

*Chertkova v. Conn. Gen. Life Ins. Co.*,
   92 F.3d 81 (2d Cir. 1996)........................................................... 19, 20

*Claes v. Boyce Thompson Inst. for Plant Rsch.*,
   88 F. Supp. 3d 121 (N.D.N.Y. 2015) .....................................................15

*Cooper v. Franklin Templeton Invs.*,
   2023 WL 3882977 (2d Cir. June 8, 2023) ............................................22

*Cooper v. Templeton*,
   629 F. Supp. 3d 223 (S.D.N.Y. 2022)....................................................24

*Dark Storm Indus. LLC v. Hochul*,
   2021 WL 4538640 (2d Cir. Oct. 5, 2021).............................................3

*de la Cruz v. New York City Human Res. Admin. Dep't of Soc. Serv.*,
   82 F.3d 16 (2d Cir. 1996).......................................................................14

*Dowrich-Weeks v. Cooper Square Realty, Inc.*,
   535 F. App'x 9 (2d Cir. 2013) ............................................... 13, 14, 15

*E.E.O.C. v. Porth Auth. of N.Y. & N.J.*,
   768 F.3d 247 (2d Cir. 2014)...................................................................12

*Feliz v. Metro. Transp. Auth.*,
   2017 WL 5593517 (S.D.N.Y. Nov. 17, 2017)........................................2

*Figueroa v. Garland*,
  2022 WL 17539114 (S.D.N.Y. Dec. 6, 2022) ........................................6

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
  783 F.3d 395 (2d Cir. 2015)........................................................11

*Fox v. City Univ. of New York*,
  1999 WL 33875 (S.D.N.Y. Jan. 26, 1999) ........................................17

*Gibson v. Cnty. of Suffolk*,
  2022 WL 1063017 (E.D.N.Y. Feb. 18, 2022).....................................15

*Haggood v. Rubin & Rothman, LLC*,
  2014 WL 6473527 (E.D.N.Y. Nov. 17, 2014).....................................23

*Halbrook v. Reichhold Chemicals, Inc.*,
  735 F. Supp. 121 (S.D.N.Y. 1990)................................................19

*Hill v. Rayboy-Brauestein*,
  467 F. Supp. 2d 336 (S.D.N.Y. 2006)............................................20

*Hornig v. Trustees of Columbia Univ. in City of New York*,
  2022 WL 976267 (S.D.N.Y. Mar. 31, 2022) ....................................25

*Kassman v. KPMG LLP*,
  925 F. Supp. 2d 453 (S.D.N.Y. 2013)............................................20

*Katz v. Beth Isr. Med. Ctr.*,
  2001 WL 11064 (S.D.N.Y. Jan. 4, 2001) ........................................18

*Leggett v. Oneida Cnty. Corr. Facility*,
  2022 WL 10763530 (2d Cir. Oct. 19, 2022).................................. 12, 16

*Madray v. Long Island Univ.*,
  789 F. Supp. 2d 403 (E.D.N.Y. 2011) ............................................20

*Moultrie v. NYS Dep't of Corr. & Cmty. Supervision*,
  2015 WL 2151827 (S.D.N.Y. May 7, 2015) ....................................24

*N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
  709 F.3d 109 (2d Cir. 2013)......................................................11

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*,
    673 F.3d 84 (2d Cir. 2012)........................................................................25

*Perry v. New York Dep't of Lab.*,
    398 F. App'x 628 (2d Cir. 2010) ...........................................................12

*Potash v. Fla. Union Free Sch. Dist.*,
    972 F. Supp. 2d 557 (S.D.N.Y. 2013)...................................................23

*Richards v. Dep't of Educ. of City of New York*,
    2022 WL 329226 (S.D.N.Y. Feb. 2, 2022).........................................22

*Scott v. Harris Interactive, Inc.*
    512 F. App'x 25 (2d Cir. 2013) .............................................................19

*Siuzdak v. Sessions*,
    295 F. Supp. 3d 77 (D. Conn. 2018)....................................................14

*Terry v. Ashcroft*,
    336 F.3d 128 (2d Cir. 2003)......................................................... 12. 13

*Tillman v. New York City Dep't of Hum. Res. Admin.*,
    2022 WL 874947 (S.D.N.Y. Mar. 24, 2022) .....................................22

## **Statute**

42 U.S.C. § 2000e ........................................................................................1

## **Rule**

Fed. R. Civ. P. 12 .......................................................................................11

Defendants-Appellees Bank Hapoalim, B.M. ("BHI") and Gil Karni ("Karni") (collectively, the "Defendants") submit this brief in response to the Brief for Plaintiff-Appellant Sol Back ("Plaintiff") concerning her appeal of a final order and judgment in the United States District Court for the Southern District of New York (the "District Court") that dismissed Plaintiff's Complaint (the "Complaint").

## STATEMENT OF THE ISSUES PRESENTED

1.     Whether the District Court erred in holding that Plaintiff's Complaint failed to adequately allege facts sufficient to show that she faced any adverse employment action, as is required to state a claim for sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

2.     Whether the District Court erred in holding that Plaintiff's Complaint failed to adequately allege facts sufficient to establish that she was constructively discharged under Title VII.

3.     Whether the District Court erred in holding that Plaintiff's Complaint failed to adequately allege facts sufficient to show that the Defendants' alleged misconduct was motivated by an "inference of discrimination," as is required to state a claim for sex discrimination under Title VII.

1

## STATEMENT OF THE CASE[1]

### I. Karni Attends In-Person Office Events in December 2021

In 2016, Plaintiff began working at BHI's New York branch as an administrative assistant to the branch's then Chief Executive Officer (the "CEO"). (A 010, ¶ 19.) Plaintiff alleged that in this role, she carried out routine administrative tasks, which included managing the CEO's calendar, organizing meetings, assisting with translating documents, and "preparing" presentations. (A 010, ¶ 20.) Based on these allegations, Plaintiff described herself to have been a "kind of Chief of Staff." (A 010, ¶ 21.) However, Plaintiff did not allege (nor could she) that she was *actually* Chief of Staff, what responsibilities a "Chief of Staff" at BHI—a position that did not and does not exist—would have, or what compensation someone with that non-existent title would be entitled to. (A 010, ¶ 21.) In late 2020, Karni became CEO of the New York Branch and, in turn, Plaintiff's supervisor. (A 012, ¶ 29.)

On December 6, 2021, Karni returned to BHI's New York office after having traveled to Las Vegas and Florida. (A 015, ¶ 46.) Two days later, Karni allegedly displayed symptoms consistent with COVID-19. (A 016, ¶ 50.) The next day, Karni attended BHI's Credit Committee meeting and an office holiday party, both held in

---

[1] The Statement of the Case is based solely on the factual allegations set forth in Plaintiff's Complaint, which Defendants must treat as true for purposes of evaluating a motion to dismiss. *See Feliz v. Metro. Transp. Auth.*, 2017 WL 5593517, at *2 (S.D.N.Y. Nov. 17, 2017). Defendants do not concede the accuracy of any of Plaintiff's allegations.

BHI's New York offices. (A 016-017, ¶¶ 54-55.) The Complaint did not allege that Karni's attendance at either event violated any government-imposed restrictions on gatherings, nor could Plaintiff make any such claim given that, in June 2021 (six months earlier), then-Governor Cuomo had announced that all state COVID-19 restrictions had been lifted.[2]

Three days after the office party, Karni allegedly tested positive for COVID-19. (A 018, ¶ 61.) Karni then stayed home for two weeks. (*Id.*) The Complaint alleged that, after interacting with Karni at the office, Plaintiff and approximately 30 other employees also became ill with COVID-19.[3] (A 017, 019, ¶¶ 58, 64.)

## II. <u>Plaintiff Lodges an Internal Complaint</u>

On December 21, 2021, Plaintiff submitted a formal complaint pursuant to BHI's confidential whistleblowing policy regarding Karni's presence in the New York office while displaying symptoms consistent with COVID-19 (the "Internal Complaint"). (A 020, ¶ 71.) Plaintiff alleged that Karni's presence violated BHI's policies, as well as those promulgated by the health authorities. (A 020, ¶ 73.)

---

[2] *See Dark Storm Indus. LLC v. Hochul*, 2021 WL 4538640, at *1 (2d Cir. Oct. 5, 2021) ("[I]n June [2021], the Governor announced that all state COVID-19 restrictions were lifted after 70% of New York residents 18 and older received at least one vaccine dose.")

[3] Plaintiff suggested that she and the other employees contracted COVID-19 as the result of their interactions with Karni, but she did not (and cannot) offer any factual basis for this contention.

However, Plaintiff's Complaint did not cite to any actual regulation or BHI policy that was purportedly violated. Instead, Plaintiff cited to an office-based work guideline promulgated by the New York State Department of Health that provided that "[a]n individual who screens positive for COVID-19 symptoms must not be allowed to enter the office and must be sent home . . . ." (A 021, ¶ 76, n.4.)

### III. <u>Plaintiff Is Offered a Transfer to a Higher-Paying Position</u>

Plaintiff's Complaint then alleged that, after she submitted the Internal Complaint, Karni's conduct towards her became "hostile." (A 022, ¶ 82.) The Complaint did not detail any allegedly hostile remarks or actions. Nor did Plaintiff identify any facts that indicate that Karni was even aware that she had lodged an Internal Complaint against him. Instead, Plaintiff asserted that Karni sought to "isolate" her, claiming that: (1) she received no text messages from Dov Kotler, BHI's Global CEO who was not based in New York and to whom she did not report, after making her Internal Complaint in late December (A 024, ¶ 89); and (2) two of her colleagues were asked by Karni to reduce their interactions with her. (A 023, ¶ 87.) Plaintiff did not claim that her alleged "isolation" from colleagues, even if true, impacted her ability to perform her duties effectively.

Plaintiff also alleged that, on March 17, 2022, she received her annual performance review. (A 024, ¶ 91.) Despite acknowledging that during her review she was awarded both a $15,000 bonus and a two percent salary increase, Plaintiff

4

claimed that the review was "scathing" and "disastrous" because Karni allegedly commented at the end of the meeting: "I don't get what you are doing at your station" and that she was "not doing her job." (A 007, 024-025, ¶¶ 5, 92, 95.)

Weeks later, on April 5, 2022, Plaintiff had a meeting with BHI's General Counsel to discuss the allegedly poor review and her (unsubstantiated) belief that Karni knew that she had lodged the Internal Complaint. (A 025, ¶ 96.) Plaintiff alleged below that BHI's General Counsel tried to address Plaintiff's concerns by offering to move her into another department at BHI or providing her with a severance package. (*Id.* ¶ 98.) Plaintiff admitted that the proposed move to another department would have resulted in higher compensation. (A 026, ¶ 99.) But Plaintiff alleges that unnamed others may have perceived such a transfer "away from the center of power" as a demotion. (*Id.*) Plaintiff did not allege that any of her colleagues actually made such remarks, or otherwise communicated to her that a transfer would be perceived as unfavorable.

Plaintiff claimed that after the meeting with the General Counsel, she continued to carry out her duties competently and efficiently despite Karni's continuing "hostile" conduct. (A 026, ¶¶ 102-03.) Again, Plaintiff failed to identify any ways in which Karni's conduct was, in fact, hostile.

Approximately two months later on May 31, 2022, Plaintiff had a second meeting with BHI's General Counsel. (A 026-027, ¶ 104.) During that meeting,

Plaintiff purportedly stated that Karni should be disciplined based on her belief that he had engaged in "hostile" behavior.  (A 027, ¶ 105.)  Once again, the Complaint did not articulate what this alleged hostile behavior was, other than stating that Karni did not "treat her with respect" during these two months.  (A 026, ¶ 102.)  Plaintiff, who allegedly felt uncomfortable working directly with Karni, was transferred to a temporary role in the compliance department on June 2, 2022.  (A 028, ¶ 115.)

After being transferred to the compliance department, Plaintiff, through her attorney, sent notice to BHI that she viewed the transfer as a constructive termination.  (A 029, ¶ 117.)  When BHI asked whether Plaintiff would be returning to work, Plaintiff's attorney responded in unequivocal terms:

> My client received an email earlier today from Jocelyn Bluth and Svetlana Portnoy about supposedly returning to the bank. I don't know if this email was sent in error or was an attempt to walk-back the bank's prior letter stating that Ms. Back could either move to compliance or face termination. But the email was not productive. As noted in my letter, Ms. Back has been **constructively discharged** and any future correspondence should be addressed to our firm's attention.[4]

(*Id.*; (A 044) (emphasis added)).

---

[4]    It was proper for the District Court to consider Exhibit A attached to the Affirmation of Scott Balber submitted on motion to dismiss because Plaintiff relied on the terms and effects of the correspondence between the parties regarding her constructive discharge to state her claims of discrimination. *See Figueroa v. Garland*, 2022 WL 17539114, at *3, *6 (S.D.N.Y. Dec. 6, 2022) (considering letter not attached to complaint because it was integral to plaintiff's allegations that the letter was issued in retaliation for plaintiff's sick leave).

**IV.**   **Plaintiff's Irrelevant Allegations Involving Other Employees**

To establish a linkage between her transfer to the compliance department and her sex, Plaintiff vaguely alleged that five male employees, all senior executives, also complained about "Karni's behavior" to BHI's Human Resources and Karni directly and were not "disciplined" for their complaints.  (A 019-020, 029, ¶¶ 67, 120.)  However, Plaintiff admitted below that these five male employees held vastly different positions, with different responsibilities, than Plaintiff as plainly indicated by their titles: Head of Food & Beverage and Corporate Banking, Chief Financial Officer, Head of U.S. C&I Portfolio Management, Head of Specialty & Sponsor Finance, and Head of Structured Finance.  (A 019-020, ¶ 67.)

Plaintiff also included numerous vague allegations that are not linked in any way to her transfer or to her sex.  (A 013-014, ¶¶ 35, 38-39.)  For example, Plaintiff contended that there was a "bank-wide culture of misogyny and impunity" and vaguely stated that some executives stared at her, took her picture, and commented on her looks at unspecified times in the past.  (A 014, ¶ 41.)  Plaintiff also alleged that sometime in December 2020 (*i.e.*, eighteen months before she claimed constructive discharge) Karni ordered her and three other support staff personnel to return to in-office work.  (A 013, ¶ 35.)  But Plaintiff made no effort to link any of these actions to the purported "constructive discharge" that she claims she faced, nor any effort to show that she was subjected to this treatment because of her sex.

## V.  <u>Plaintiff Initiates This Action in the District Court</u>

Plaintiff brought this action on or about March 10, 2023, asserting a federal sex discrimination claim under Title VII, as well as similar state and city law claims under the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and Section 740 of the New York Labor Law ("NYLL"). (A 029-034.)  Defendants filed their motion to dismiss on June 30, 2023, which was fully briefed by July 28, 2023.  (A 004.)

In an Opinion and Order dated March 21, 2024 (the "Order"), the Honorable Edgardo Ramos of the United States District Court for the Southern District of New York dismissed all of Plaintiff's claims.  (A 055-074.)  The Order contains three key holdings which dispose of all of Plaintiff's federal claims.

*First*, the District Court held that Plaintiff failed to allege facts sufficient to show that her transfer to the compliance department was an adverse employment action.  (A 067-068.)

*Second*, based in part on that decision, as well as the District Court's analysis of other purportedly "hostile" conduct faced by Plaintiff, the District Court also held that "[n]one of the alleged adverse actions by BHI or Karni rise to the level of a constructive discharge."  (A 064.)

*Third*, the District Court held that Plaintiff failed to allege sufficient facts to show that any alleged adverse employment actions were motivated by her sex.  (A

8

069-073.)    Specifically, the District Court concluded that "[t]he comparators proffered by [Plaintiff] cannot support a disparate treatment claim because numerous distinguishing factors show that they were not similarly situated."  (A 070.)  The District Court also rejected Plaintiff's attempt to use allegations concerning a misogynistic culture to show an inference of discrimination because there was "simply no relation" between these allegations and Karni's alleged response to her complaints.  (A. 072.)

On April 19, 2024, Plaintiff filed her notice of appeal.  (A 076.)

## SUMMARY OF THE ARGUMENT

All three of the District Court's determinations below, which necessitated the dismissal of Plaintiff's claims, were correct.

*First*, the District Court properly held that Plaintiff's Complaint failed to adequately allege that her transfer to the compliance department was an adverse employment action.  (A 067-68.)  On appeal, Plaintiff argues that the District Court improperly failed to consider certain allegations that Plaintiff contends established that her transfer was a "demotion," and in turn, an adverse employment action. (Appellant Br. at 12.)  However, the District Court properly considered all of the relevant allegations.  Plaintiff's problem is she did not allege any facts, which supported her assertion that the transfer was a "demotion," only her subjective belief

9

that the other employees would perceive her transfer as a demotion. This is insufficient to plead an adverse employment action.

*Second*, the District Court properly held that Plaintiff's Complaint failed to allege a "constructive termination." (A 063-068.) Plaintiff argues on appeal that the District Court improperly failed to consider the cumulative effect of several purported "adverse actions," which, when viewed together, could amount to a constructive discharge. (Appellant Br. at 23.) However, the District Court properly acknowledged that only *adverse actions* need be considered as part of the cumulative analysis. Plaintiff's problem is, once again, that she failed to allege *any* adverse, much less any "intolerable," employment actions, which are necessary to state a claim for a constructive discharge.

*Third*, the District Court properly concluded that Plaintiff's Complaint failed to allege facts that supported an inference that Plaintiff was subjected to discriminatory treatment **because of** her sex. (A 068-072.) On appeal, Plaintiff argues that she sufficiently alleged that the treatment of a group of male senior executives who also purportedly complained about Karni's attendance at the office party gave rise to the necessary inference. (Appellant Br. at 27.) However, the District Court properly considered Plaintiff's allegations, and concluded that their conduct was not sufficiently similar to give rise to the inference: not one of the male executives complained in the same way that Plaintiff did, nor were they in a remotely

10

comparable situation to Plaintiff, who had expressly demanded that her immediate superior face discipline. (A 069-071.) Plaintiff also repeats her vague and conclusory allegations that BHI had a "misogynistic" culture. (Appellant Br. at 33.) Yet, as noted by the District Court (A 071-073), Plaintiff failed below—and continues to fail on this appeal—to provide any explanation as to how those supposed "misogynistic" behaviors related to Defendants taking any adverse employment action against Plaintiff.

Accordingly, the District Court's Order should be affirmed in all respects.

## STANDARD OF REVIEW

Defendants do not contest that this Court "reviews *de novo* the dismissal of a complaint under Rule 12(b)(6), accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 119 (2d Cir. 2013). Defendants also do not contest that factual disputes are generally "inappropriate for resolution on a motion to dismiss," or that the "choice between two plausible inferences drawn from factual allegations is for the factfinder, not the Court." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 405 (2d Cir. 2015). However, when evaluating whether Plaintiff's Complaint alleged facts sufficient to survive the Defendants' Rule 12(b)(6) motion, this Court need not credit conclusory allegations contained in the Plaintiff's complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, to reverse the decision below, this Court must conclude that the facts alleged in Plaintiff's Complaint contained "nonconclusory factual matter sufficient to nudge [her] claim from conceivable to plausible." *E.E.O.C. v. Porth Auth. of N.Y. & N.J.*, 768 F.3d 247, 253 (2d Cir. 2014). Any new factual allegations raised by Plaintiff on this appeal, but which did not appear in Plaintiff's underlying Complaint, should be disregarded absent extraordinary circumstances. *See Leggett v. Oneida Cnty. Corr. Facility*, 2022 WL 10763530, at *2, n.3 (2d Cir. Oct. 19, 2022). Moreover, this Court is free to disregard arguments and issues not raised by Plaintiff below. *See Perry v. New York Dep't of Lab.*, 398 F. App'x 628, 629–30 (2d Cir. 2010).

## ARGUMENT

## I. The District Court Properly Concluded That Plaintiff's Complaint Failed to Allege Any Adverse Employment Action

The heart of Plaintiff's Complaint below was her allegation that her transfer from a position as an Executive Assistant to a role in the compliance department constituted an adverse employment action under Title VII. (A 028, ¶ 115.)

However, "[a]n 'adverse employment action' is one which is 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Terry v. Ashcroft,* 336 F.3d 128, 138 (2d Cir. 2003) (quoting *Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir. 2000)). "Examples of materially adverse changes include 'termination of employment, a demotion evidenced by a decrease

12

in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" *Id.* (quoting *Galabya*, 202 F.3d at 640).

Plaintiff admittedly did not plead that she was terminated, lost wages or any other benefits, or took on diminished material responsibilities following her complaints about Karni. (A 026, ¶ 102.) Instead, Plaintiff only alleges that the transfer "would be perceived by her colleagues for what it was – a demotion." (A 026, ¶ 99.) Unsurprisingly then, the District Court held that Plaintiff failed to plead facts sufficient to show that her transfer amounted to an adverse employment action. (A 063-A 068.) Nonetheless, on this appeal, Plaintiff challenges three aspects of the District Court's decision, each of which is meritless.

## A. Plaintiff's Speculation That Her Transfer Was Viewed by Others as a Demotion is Insufficient

Plaintiff's first argument is that her allegation that her colleagues "would perceive the transfer as a demotion" is sufficient to plead an adverse employment action. (Appellant Br. at 19.) However, as the District Court already held—and Plaintiff does not contest—this allegation is a purely subjective assessment by Plaintiff herself. (A 067.) As a matter of law, such an allegation does not suffice to establish an adverse employment action. *See Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 F. App'x 9, 10-12 (2d Cir. 2013) (affirming dismissal of

13

constructive discharge claim because plaintiff only conclusorily alleged, as Plaintiff does here, that she believed she was "demoted").

The authority cited by Plaintiff on this appeal does not contradict this basic principle, nor does it provide support for Plaintiff's position. Instead, in those cases, the plaintiff was able to plead a specific fact—outside of the plaintiff's own subjective assessment regarding the prestigiousness of her job—that indicated that a complained of transfer was a demotion. *Cf. de la Cruz v. New York City Human Res. Admin. Dep't of Soc. Serv.*, 82 F.3d 16, 21 (2d Cir. 1996) (plaintiff alleged transfer to "less prestigious unit *with little opportunity for professional growth*" (emphasis added)); *Siuzdak v. Sessions*, 295 F. Supp. 3d 77, 100 (D. Conn. 2018) (plaintiff alleged that specific comments made by superior insinuated plaintiff's new position was less prestigious). Plaintiff's Complaint below pleaded no similar facts. Accordingly, there is no basis to disturb the District Court's decision dismissing Plaintiff's Complaint.

## B. Plaintiff's Allegation that She Was Transferred "Away From the Center of Power" is Insufficient

Separately, Plaintiff argues that she sufficiently alleged a "demotion" based upon her allegation that her transfer moved her away "from the center of power." (Appellant Br. at 19.)

However, as this Court made clear in *Dowrich-Weeks*, a plaintiff must plead facts to support a conclusion that a change in position is a demotion, which may

14

include "her having received 'a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.'" 535 F. App'x at 12 (quoting *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006)).

Plaintiff can cite to no authority that supports her current position that an alleged move away from the "center of power," is sufficient to plead a "demotion." Instead, Plaintiff misrepresents two cases, *Claes v. Boyce Thompson Inst. for Plant Rsch.*, 88 F. Supp. 3d 121, 128 (N.D.N.Y. 2015) and *Gibson v. Cnty. of Suffolk*, 2022 WL 1063017, at *2 (E.D.N.Y. Feb. 18, 2022), and claims that they involved "striking parallels to the facts alleged here." However, in both of those cases, the plaintiff alleged some specific fact that met one of the specific *Dowrich-Weeks* criteria. *See Claes*, 88 F. Supp. 3d at 128 (plaintiff alleged transfer placed her in lower pay band and subjected her to additional performance reviews); *Gibson*, 2022 WL 1063017, at *2 (plaintiff alleged transfer to "less prestigious" detective unit resulted in plaintiff not receiving overtime opportunities and not working night tours, making plaintiff ineligible for night differential pay).

Accordingly, the District Court properly concluded that Plaintiff's Complaint failed to allege facts to support a conclusion that her transfer constituted a demotion, or adverse employment action.

### C. Plaintiff's Unpleaded Allegations Regarding Her Skill Set Should Not Be Considered on Appeal

As a last-ditch attempt to sustain her claims, Plaintiff asserts that her transfer "necessitated a different skill set, in effect derailing [Plaintiff's] existing career," and in turn, amounted to a "demotion." (Appellant Br. at 21). Yet, Plaintiff **never** alleged in her Complaint that she lacked the skill for a position in the compliance department or would be incapable of performing her new role. Plaintiff presents no argument why this Court should take the extraordinary step of considering these new allegations on appeal when they were not alleged in her Complaint below. *See Leggett,* 2022 WL 10763530, at *2, n.3. Accordingly, the Court should disregard these new allegations not raised in Plaintiff's Complaint.

## II. The District Court Properly Concluded That Plaintiff's Complaint Failed to Allege a Constructive Termination

As noted above, the District Court correctly concluded that Plaintiff's transfer to the compliance department was not an adverse employment action. In light of that decision, as well as Plaintiff's failure to allege any other actionable adverse employment action, the District Court concluded that Plaintiff necessarily failed to allege a "constructive discharge." (A 064-068.)

On appeal, Plaintiff raises two primary challenges to the District Court's decision. Yet as is explained below, neither challenge has any merit.

### A. None of the Actions Alleged by Plaintiff Are Considered Adverse

Plaintiff's first gambit is to repeat four categories of plainly non-actionable allegations from her Complaint and complain that the District Court erred when it held those allegations were insufficient. (Appellant Br. at 23-26.) But in so arguing, Plaintiff fails to identify any actual error in the District Court's decision.

*First*, Plaintiff repeats her claim that Karni allegedly criticized her at the end of her performance review, which Plaintiff asserts is an actionable, adverse employment action. (Appellant Br. at 23-24.) Yet Plaintiff ignores the well-established law, cited by the District Court below, that to plead a constructive discharge, a plaintiff must allege "more than unfair criticism or treatment by a supervisor." (A 064 (citing *Catania v. NYU Langone Health Sys.*, 2022 WL 17539121, at *3 (S.D.N.Y. Dec. 5, 2022)). The two cases cited by Plaintiff on appeal are not to the contrary. Instead, they stand for the uncontroversial proposition that informing an employee that she should not return to work, or unequivocally would be terminated, can constitute a constructive discharge. *See Chen v. Shanghai Cafe Deluxe, Inc.*, 2019 WL 1447082, at *12 (S.D.N.Y. Mar. 8, 2019) (supervisor informed plaintiff she would not be scheduled for work and should leave premises); *Fox v. City Univ. of New York*, 1999 WL 33875, at *6 (S.D.N.Y. Jan. 26, 1999)

17

(supervisor informed employee of plan to terminate employment). Karni's alleged comments bear no resemblance to these direct statements.

*Second*, Plaintiff repeats her assertion that BHI "threatened" her with termination, and claims that the District Court erred in finding that "the [C]omplaint does not include any allegations of an explicit threat." (A 066.) However, the District Court did not dismiss the Complaint solely because there was no allegation of an "explicit threat." Rather, the District Court properly concluded that this allegation was insufficient to state a claim because, as a matter of law, "explicit threats are frequently dismissed as insufficient." (*Id.* citing *Katz v. Beth Isr. Med. Ctr.*, 2001 WL 11064, at *12 (S.D.N.Y. Jan. 4, 2001) (finding no constructive discharge where employee was "routinely" berated by her supervisors, told to resign if dissatisfied, "and at least once threatened with termination")). *See also Bernstein v. New York City Dep't of Educ.*, 2020 WL 6564809, at *6 (S.D.N.Y. Nov. 9, 2020) ("mere threat of employment action that is not ultimately realized cannot constitute an adverse action.").

Plaintiff does not contest this legal principle, or otherwise attempt to distinguish these authorities. She therefore provides no basis to reverse the District Court's dismissal.

*Third*, Plaintiff repeats her assertion that her transfer to the compliance department was an adverse employment action because she "had no interest in

18

compliance work" and "lacked the requisite skill" for her new position. (Appellant Br. at 25.) Yet as noted above, these facts were not alleged in the Complaint and should be disregarded.

*Fourth*, Plaintiff repeats her allegation that she considered her transfer to the compliance department to be a "demotion." (Appellant Br. at 26.) However, as explained at length above, Plaintiff pled no facts sufficient to demonstrate that her transfer constituted a demotion such as a decreased salary or diminished career advancement opportunities.[5]

Accordingly, Plaintiff presents no arguments on appeal to disturb the District Court's analysis that each action alleged by Plaintiff was not so intolerable as to amount to a constructive discharge.

### B. The District Court Did Not Err In Its Analysis of Defendants' Alleged Cumulative Actions

Plaintiff also claims that the District Court erred because it failed to consider the "cumulative effect" of the four alleged "adverse employment actions" discussed above. (Appellant Br. at 23 (citing *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 90 (2d Cir. 1996).)

---

[5]   *Cf. Scott v. Harris Interactive, Inc.*, 512 F. App'x 25, 28 (2d Cir. 2013) (plaintiff's change in position resulted in one third of original salary); *Halbrook v. Reichhold Chemicals, Inc.*, 735 F. Supp. 121, 126–27 (S.D.N.Y. 1990) (plaintiff alleged that denial of promotion resulted in "little to do" and effectively ended any advancement opportunities).

Plaintiff's argument rests on an inaccurate assumption: that Plaintiff had successfully alleged any "adverse employment action" at all. As the District Court held—and which Plaintiff does not challenge on appeal—the Court need only consider the cumulative effect of "adverse" actions. *See Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 356, n.22 (S.D.N.Y. 2006) ("[T]he Court is aware of [no law] that supports the proposition that the Court can consider the cumulative effect of *non-adverse* employment actions when evaluating an intentional discrimination claim." (emphasis added)). Every single case cited by Plaintiff is in agreement. *See Chertkova*, 92 F.3d at 90 ("the effect of a number of ***adverse conditions*** in the workplace is cumulative" (emphasis added)); *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 475 (S.D.N.Y. 2013) (same); *Madray v. Long Island Univ.*, 789 F. Supp. 2d 403, 410 (E.D.N.Y. 2011) (same). Because Plaintiff did not allege any adverse action at all, there were no actions to consider "cumulatively."

But even if this Court were to determine that her trivial complaints rose to the level of an adverse action, the complaints would still not—cumulatively—state a claim for a constructive discharge. To plead a constructive discharge, Plaintiff must allege facts that show her workplace conditions were "intolerable."

As is self-evident from the above, being transferred—for more pay—and receiving a handful of critiques and indirect "threats" hardly amount to "intolerable conditions." *See, e.g.*, *Bernstein*, 2020 WL 6564809, at *7 (finding no constructive

discharge where plaintiff received disciplinary letters, was threatened with "Unsatisfactory" rating, faced negative observations, and was denied sick and medical leave). The District Court thus properly determined that Plaintiff "has not alleged facts to support the claim that she was exposed to 'working conditions so intolerable that [she was] forced into an involuntary resignation.'" (A 068 (citation omitted).)

In sum, Plaintiff failed to plead any facts to support that she was subjected to an intolerable workplace to have suffered a constructive termination. The District Court's decision should be affirmed.

## III.  The District Court Properly Concluded That Plaintiff Failed to Allege Facts to Support an Inference of Discrimination

The District Court also concluded that Plaintiff failed to allege any facts that would support an inference that the purported adverse employment actions she faced were motivated by discriminatory intent. (*Id.*) Plaintiff claims the District Court made three errors in reaching this decision. Yet as is explained below, each purported "error" was, in fact, a proper application of the law.

### A.  The Court Can Determine If Plaintiff's Comparators Are Similarly Situated as a Matter of Law

In her Complaint, Plaintiff attempted to show the required "inference of discrimination" by pointing to five senior, male executives, who she claims also complained about Karni's attendance at the office party, but who were not

21

"disciplined" in the same manner that she was. (A 008, ¶ 7.) However, as the District Court recognized, "[t]he comparators proffered by [Plaintiff] cannot support a disparate treatment claim because numerous distinguishing factors show that they were not similarly situated." (A 070.)

Nonetheless, Plaintiff argues that the District Court's decision should be reversed because, whether or not her alleged comparators are "similarly situated" is necessarily a "question of fact" that may not be resolved on a motion to dismiss. (Appellant Br. at 27-28.)

Plaintiff is clearly wrong. It was Plaintiff's burden to allege facts demonstrating that she was treated differently from other similarly situated employees outside her protected class. Indeed, courts have routinely granted motions to dismiss, affirmed by this Court, based on a plaintiff's failure to identify sufficiently similar comparators. *See Cooper v. Franklin Templeton Invs.*, 2023 WL 3882977, at *3 (2d Cir. June 8, 2023) (affirming dismissal of sex discrimination claims where "three proffered comparators each 'occupied roles that were vastly different on their face'"); *Tillman v. New York City Dep't of Hum. Res. Admin.*, 2022 WL 874947, at *6 (S.D.N.Y. Mar. 24, 2022), *aff'd*, 2023 WL 2770218 (2d Cir. Apr. 4, 2023) (holding plaintiff was not similarly situated to comparator because they held different titles, worked in different departments, with a different supervisor); *Richards v. Dep't of Educ. of City of New York*, 2022 WL 329226, at *12 (S.D.N.Y.

Feb. 2, 2022) (holding that plaintiff and comparator were not subject to the same workplace standards because they held different work responsibilities); *Haggood v. Rubin & Rothman, LLC*, 2014 WL 6473527, at *12 (E.D.N.Y. Nov. 17, 2014) (holding that comparator employees were "clearly not similarly situated" because they were plaintiffs' supervisors). And as set forth below, Plaintiff's failure to allege a sufficiently similar comparator is fatal to her claims in this case.

### B.   Plaintiff Is Not Comparable to Five Senior Executives

Plaintiff also claims that in deciding the five senior male executives were not similarly situated to her, that the District Court overlooked the "nature of the conduct in which the employees engaged, and the workplace standards implicated by that conduct." (Appellant Br. at 28.)

However, such an analysis was not required. When deciding whether a comparator is similarly situated to plaintiff, the Court is required to consider whether the plaintiff shares "sufficient employment characteristics" with that comparator. *Potash v. Fla. Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 579–80 (S.D.N.Y. 2013) (quoting *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001)). Here, Plaintiff does not challenge that she was the only employee that directly and exclusively reported to Karni. This, combined with the facts that the executives held dramatically different job responsibilities, seniority, and working conditions than Plaintiff, all allowed the District Court to reach the conclusion that, as a matter of

law, Plaintiff was not similarly situated to her proffered comparators. *See Cooper v. Templeton*, 629 F. Supp. 3d 223, 231 (S.D.N.Y. 2022) (cleaned up).

But even accepting Plaintiff's position, none of the proffered comparators engaged in "conduct" whose nature was "similar" to that of Plaintiff. Plaintiff's claim rests on her having made a formal complaint, through BHI's whistleblower program, regarding her direct and immediate supervisor, who Plaintiff also demanded be "disciplined." (A 020, 027, ¶¶ 71, 105.) None of her comparators are alleged to have engaged in similar conduct: each allegedly complained informally to BHI's human resources department or Karni directly. (A 019, 027, 029, ¶¶ 67, 105, 120.) Accordingly, as correctly noted by the District Court "[e]mployees treated differently for engaging in different conduct does not give rise to an inference of discrimination." *See Moultrie v. NYS Dep't of Corr. & Cmty. Supervision*, 2015 WL 2151827, at *3 (S.D.N.Y. May 7, 2015) ("Less severe punishment for . . . qualitatively different misconduct does not raise an inference of discrimination.").

Accordingly, Plaintiff provides no basis for reversing this element of the District Court's decision below.

## C. Plaintiff's Allegations of a Misogynistic Work Culture Are Insufficient

Finally, Plaintiff implies, but does not state, that the District Court erred in holding that her vague allegations of a "misogynistic" work culture and Karni's "boorish" behavior failed to support an inference of discriminatory intent.

(Appellant Br. at 4, 33-35.) However, as the District Court noted, Plaintiff failed to allege any facts to show that the complained of behaviors occurred "because of her sex" or that any of those behaviors were a reaction to her whistleblowing complaint which, in turn, is fatal to Plaintiff's claims. (A 072 (citing *Hornig v. Trustees of Columbia Univ. in City of New York*, 2022 WL 976267, at *18 (S.D.N.Y. Mar. 31, 2022).)

In this appeal, Plaintiff simply copy and pastes the brief that she filed below, and which the Court rejected. Yet, because Plaintiff does not even attempt to address the District Court's reasoning below, she has failed to provide any basis to reverse its decision.

## IV. The District Court Correctly Dismissed Plaintiff's Pendent State and City Law Claims

Finally, while Plaintiff appeals the entirety of the underlying Order, Plaintiff does not at any point contest the District Court's decision that if the Title VII claim was inadequately stated, it was entitled to deny exercising jurisdiction over the attendant state law claims. (A 073.) Accordingly, by not challenging this portion of the Order, Plaintiff has waived any argument that the Court should have nevertheless exercised supplemental jurisdiction over Plaintiff's state law claims. *See Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 107 (2d Cir. 2012) ("an appellant must 'advance an argument,' and we generally will decline to consider issues that are 'not sufficiently argued.'" (citation omitted)).

25

## **CONCLUSION**

For all the foregoing reasons, Defendants respectfully request that this Court affirm the District Court's Order granting Defendants' motion to dismiss in its entirety.

Dated: August 13, 2024

Respectfully submitted,

**HERBERT SMITH FREEHILLS
NEW YORK LLP**

Scott S. Balber
Michael P. Jones
Tyler T. Hendry
200 Park Avenue
New York, NY 10166
Tel: (917) 542-7600

*Attorneys for Defendants-Appellees
Bank Hapaolim, B.M. and Gil Karni*

## <u>CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)</u>

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure ("FRAP") 32(a)(7) because the brief contains 5,909 words, as counted by Microsoft Word, excluding the cover, table of contents, table of authorities, signature block, and certificates of counsel.

2.     This brief complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because this brief has been prepared in 14 point Times New Roman font, a proportionally spaced typeface, using Microsoft Word.

Dated: August 13, 2024                                  Respectfully submitted,

**HERBERT SMITH FREEHILLS NEW YORK LLP**

Scott S. Balber
Michael P. Jones
Tyler T. Hendry
200 Park Avenue
New York, NY 10166
Tel: (917) 542-7600

*Attorneys for Defendants-Appellees*
*Bank Hapaolim, B.M. and Gil Karni*

27